MARTIN S. NELSON, Appellee, v. H. G. MCMILLAN et al., Appellants.

**JUDGMENT:** **Jurisdiction—Dropping Cause From Calendar—Subsequent Entry of Judgment.** The entry of an order of court striking or dropping an action from the calendar does not necessarily deprive the court of jurisdiction to subsequently enter judgment therein.

PRINCIPLE APPLIED: At the trial term of a cause, plaintiff and defendant filed a signed stipulation, agreeing (a) to the amount of the judgment to be entered on failure of defendant to comply with certain conditions, and (b) to the future and specified date on and after which such judgment might be entered. In this condition of matters, the court entered an order dropping the cause from the calendar. A later stipulation was filed, extending the time for entering judgment. *Held*, the entry of said order did not deprive the court of jurisdiction to enter judgment subsequent to the date fixed in the last stipulation.

**JUDGMENT:** Jurisdiction—Entry of Judgment—Right to Notice—
2  **Waiver.** One who has filed a stipulation agreeing to the amount of the judgment to be entered against him, and the date of such entry, thereby waives all further right to notice of the proceeding leading up to and culminating in the entry of judgment.

**JUDGMENT:** Jurisdiction—Stipulation for Judgment on Certain
3  **Date—Entry on Subsequent Date.** The invalidity of a judgment may not be predicated on the fact that the court was not in session on the *particular* day on which the parties had stipulated that judgment might be entered, but entered judgment on a *subsequent* day when it was in session.

**CONSPIRACY:** Declarations and Acts of Co-conspirators—Admissi-
4  **bility—Preliminary Proof Necessary.** Before declarations and acts of co-conspirators are even admissible against one charged with a conspiracy, there must first be evidence fairly tending to show that they *are* co-conspirators.

**CONSPIRACY:** Evidence—Sufficiency. Evidence reviewed, and
5  held wholly insufficient to carry to the jury the question of the existence of an alleged conspiracy.

**PLEADING:** Construction—Theory of Action—Change of Front.
6  One must stand or fall on his own chosen cause of action, as expressed in his pleading. Failing to establish his cause of action as he has pleaded it, he may not insist on the submission of another cause of action, not pleaded.

PRINCIPLE APPLIED: Defendant (as a counterclaim) pleaded that plaintiff and others entered into a conspiracy to injure defendant in his business of breeding and selling blooded stock; that, among other matters, defendant purchased of plaintiff certain horses, and as to certain of them plaintiff agreed to sign applications for their registration; that plaintiff failed to do so; *that plaintiff's failure was in pursuance of said alleged conspiracy;* that defendant suffered damages in a named sum by reason of the conspiracy. Defendant did not allege that plaintiff's failure to sign said applications depreciated the value of the ani-

mals. At the trial, defendant failed to establish the conspiracy, but did establish plaintiff's failure to sign the applications for registration. It appeared that defendant registered the animals himself, after plaintiff's failure to do so. *Held,* defendant could not complain that the court refused to submit the question of defendant's damages because of plaintiff's failure to sign said applications.

APPEAL AND ERROR: Review—Failure to Establish Cause of Action—Rejection of Evidence of Damages. One may not complain that the court declined to listen to evidence of the damages suffered under an alleged cause of action, of the existence of which there was no evidence.

JUDGMENT: Conclusiveness—Matters Adjudicated. One who allows judgment to be entered against him without interposing a defense of which he has full knowledge and ample time for presentation may not thereafter litigate such defense.

*Appeal from Lyon District Court.*—W. D. BOIES, Judge.

SATURDAY, FEBRUARY 12, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION at law to recover from defendants upon a certified transcript of a foreign judgment. Judgment for plaintiff, and defendants appeal. The issues joined and the questions to be considered upon this appeal involve a somewhat complicated state of facts, which are sufficiently stated in the opinion.—*Affirmed.*

*S. D. Riniker, Simon Fisher & H. G. McMillan,* for appellants.

*Johnson & Linde* and *E. C. Roach,* for appellee.

WEAVER, J.—Plaintiff's action is grounded upon a judgment rendered in his favor and against the defendants in the United States district court for the district of Minnesota. A duly certified transcript is attached to the petition, showing the judgment to have been entered on February 23, 1914, for $5,170.93 damages and $214.25 costs, which indebtedness is

alleged to be wholly unpaid, and a recovery therefor is asked.

The answer, which is somewhat voluminous, may be briefly stated as follows: (1) They deny the judgment sued upon, and allege that it was entered without jurisdiction. (2) By way of counterclaim, they charge that plaintiff is one of a wrongful combination of persons who have conspired to defame the character of defendants for integrity in business as breeders of Percheron horses; and that, in pursuance of such conspiracy he, with others, has maliciously circulated false statements and defamatory charges derogatory to defendants and their business, by reason of which defendants have suffered great damage. (3) They further charge that, after litigation was begun, and before said judgment was rendered, the parties entered into an agreement of settlement of their controversy, by the terms of which, among other things, the plaintiff promised and agreed to sign and deliver to defendants, written applications for the registry of four certain weanling colts, to enable defendants to secure their registration by the Percheron Society of America, and thereby promote the sale of said animals; but, upon demand therefor, plaintiff neglected and refused to sign or deliver the applications as promised, and entered into a conspiracy with others to prevent such registration, whereby defendants claim to have been further damaged in another large sum.

A jury was impaneled for the trial of the issues joined, and both parties, having offered their evidence, rested. The court thereupon sustained plaintiff's motion directing a verdict in his favor for the amount of the judgment sued upon, and from this ruling and from the judgment upon the directed verdict, the defendants appeal.

I. Much of the evidence is quite irrelevant to the issues here joined, being seemingly directed to the merits of the original case in which the judgment referred to was obtained. It is hardly necessary to say that matters there adjudicated, or which ought to have been there adjudicated, cannot be relitigated here. If that court had jurisdiction of the par-

ties and subject-matter, we are bound to give the judgment full force and credit. It was rendered by a court of record and of general jurisdiction, and, being in due form and duly certified, the regularity and validity thereof will be taken for granted, in the absence of any showing which requires a different conclusion.

The material facts of record seem to be as follows: Plaintiff brought suit against defendants in the district court of Yellowstone County, Minnesota. Defendants appeared and caused the removal of the same to the United States district court for that state, where it was finally placed upon the calendar for trial at the December, 1913, term of that court. At such term of court, and before the case had been reached for trial, a stipulation was filed therein by counsel for the respective parties, as follows:

"In the District Court of the United States District of Minnesota.

"Martin S. Nelson, Plaintiff, v. H. G. McMillan et al., Defendants.—Stipulation.

"It is hereby agreed and stipulated by and between the parties in the above entitled cause, that the same is to be settled upon the following and conditions, to wit: The defendants are to purchase from the plaintiff the 12 horses, nine of which are set out and described in the plaintiff's amended complaint, the said horses being a certain registered Percheron stallion, named Roderigo, Reg. No. 75829; a certain Percheron mare, Myrtle, Reg. No. 50820; three colts of a certain registered Percheron mare named Phyllis, Reg. No. 50819, the said colts being named Tekla, Everglade, and Chester; three colts of the registered mare Myrtle, mentioned above, one being a black suckling colt, the others being named Custer and Corkpine; two colts from a certain registered mare named Martha, one of said colts being a suckling colt, the other, a colt named Hardpine; one black suckling colt from the mare colt Tekla, hereinbefore described, and

one suckling colt from the colt Everglade, hereinbefore described.

"The plaintiff is to care for the said animals until the 5th day of January, 1914, unless the same shall be before that time taken by the defendants, or some assign of the defendants, and the defendants are to take the said horses either by themselves or by some party to whom they shall assign their rights under this stipulation on or before the 5th day of January, 1914, at Canby, Minnesota, and pay to the plaintiff at the time of taking said animals the sum of $7,760; the said horses while being kept by the plaintiff are kept at the risk of the defendants.

"It is further understood and agreed that the said horses when delivered to the defendants shall be accompanied with such certificates of registration in the Percheron Society of America as the plaintiff now has.

"It is further stipulated that in the event the defendants shall not tender to the plaintiff performance of their part of this stipulation on or before the 5th day of January, 1914, then, in that event, and upon the filing of this stipulation and an affidavit of the plaintiff's attorney, O. A. Lende, of the nonperformance by the defendants of their part of this stipulation, then the court in which this cause is pending shall enter judgment against the defendants in the sum of $7,760 and costs, and the plaintiff may cause execution to issue on said judgment for sale of said horses and have general execution for any balance that may be due on said judgment after the sale of said horses.

"Dated December 2, 1913.

"JOHNSON & LENDE, Attorneys for Plaintiff.

"J. M. PARSONS, Attorney for Defendants."

This stipulation having been filed, the court made an entry dropping the case from the calendar. The order is not set out in the abstract, and there is no showing of the form or terms thereof, except as here stated. Thereafter, and dur-

ing the same term, the parties filed therein a further stipulation, as follows:

"In the District Court of the United States District of Minnesota.

"Martin S. Nelson, Plaintiff, v. H. G. McMillan et al., Defendants.

"It is hereby stipulated by and between the parties in the above entitled action that judgment is not to be entered up against the defendant pursuant to the stipulation of December 2, 1913, until February 20, 1914.

"It is further stipulated that, in consideration of turning over to the defendants the twelve head of horses involved in this action and embraced in the stipulation of December 2, 1913, on January that the defendants will conduct a public sale of said horses in the city of Canby, Minnesota, on the 24th day of January, 1914, and that said sale is to be cried by either a local or other auctioneer, or both, and that said sale is to be clerked by the First National Bank of Canby, who is hereby authorized and directed to turn the net proceeds of said sale over to the plaintiff or his attorneys to be applied as part payment on the sum of $7,760, the amount set forth in the stipulation of December 2, 1913. That the balance then remaining due and owing shall be paid by the defendants on or before February 20, 1914.

"It is further stipulated that the plaintiff as soon as he receives blank applications will sign said application for the registration of the four weanlings involved in this auction not heretofore registered.

"Dated this 2d day of January, 1914.

                    "JOHNSON & LENDE,
              "Attys. for Plaintiff, Canby, Minn.
                 "J. B. McMILLAN,
                       "One of the Defendants.
                 "S. D. RINIKER,
                    "Attorney for Defendants."

Thereafter, on February 23, 1914, plaintiff, as provided for in the first stipulation, filed in said action the affidavit of one of his attorneys, showing the nonperformance of the terms stipulated on the part of defendants, and, on presentation thereof, the court ordered judgment in favor of plaintiff and against defendants, as shown by the transcript of said judgment attached to the petition in the case at bar. It further appears that, on February 14, 1914, a copy of the taxation of costs, including an itemized statement thereof and clerk's memorandum, all duly verified, were prepared and served upon or mailed to each of the counsel appearing for defendants. All these records, and others not essential to the question before us, fully and properly certified and exemplified, were put in evidence by the plaintiff below.

The attack now made upon the jurisdiction of the court to enter such judgment is based upon the proposition that, notwithstanding the stipulations above set out, the court was not authorized to enter judgment without further notice to defendants for the following reasons: (1) That the time fixed in the second stipulation expired on February 21, 1914; but it appears that, on the date named, the cause had not only been stricken from the calendar, but the court was not in session, having, by order duly entered, adjourned from February 18th to Monday, February 23, 1914. We are also cited to the Federal statute which provides that proceedings in the Federal district court shall conform "as near as may be" to the practice and mode of proceeding in like cases in the state court. Revised Statutes of the United States, Sec. 914. To show the practice in the state court, we are then cited to the statutes of the state of Minnesota, as follows: Gen. Stat. Minnesota, Sec. 7742, by which, after appearance entered for defendants, counsel is entitled to notice of all subsequent proceedings; Sec. 7793, by which notice of trial is required; Sec. 7749, providing for notices of motions; and Sec. 7745, providing for service of notices by mail. It may also be added that, by Sec. 7817 of the same statutes, the

court "is always open for the entry of judgments and orders
and for the hearing and determination of all matters except
issues of fact."

The essence of the argument is: (1) That the case,
having been stricken from the calendar, could not be restored
except upon notice; (2) that the first stipulation was super-
seded by the second, and, as the second stipulation contains
no provision concerning an entry of judgment, none can
properly be entered, except upon notice; and (3) that there
was no court in session on February 20, 1914, and jurisdic-
tion to further act in the matter was thereby lost.

We have first to consider the effect of the court's entry
on December 5, 1913, dropping or striking the case from the
calendar. While the abstract states that such an order was
entered, the entry itself, as we have already
noted, is not set out, and we have no direct
or express information as to the occasion for
such action or the exact terms of the order.
But when we stop to note the admitted facts,
its meaning and effect are not difficult of comprehension.
The case had been regularly placed upon the court's calendar
for trial at that December, 1913, term. On December 2d,
however, the parties had filed a stipulation of settlement,
by the terms of which the defendants were to take or receive
from plaintiff certain horses and pay to him the sum of
$7,760 in money, not later than January 5, 1914. In the
event of defendants' failure to perform these stipulations on
their part on or before the date named, then, upon filing
such stipulation, with an affidavit of plaintiff's attorney show-
ing such nonperformance, judgment was to be entered for
plaintiff in the sum above mentioned and costs, and special
execution would issue thereon for the sale of the horses. This
stipulation took the case definitely and finally from the
court's trial list, the amount of defendants' indebtedness was
fixed and judgment thereon was provided for, the formal
entry thereof being postponed to a definite date, to allow

1. JUDGMENT:
jurisdiction:
dropping cause
from calendar:
subsequent en-
try of judg-
ment.

defendants to obviate its necessity by earlier payment, should
they desire or elect so to do. This being the situation, there
was no reason for longer retaining the case upon the trial
calendar. The dropping of the case from the calendar was
apparently but the court's recognition of this change in the
status of the case brought about by the stipulation, but it is
difficult to see how it could deprive the court of its jurisdic-
tion to enter the judgment for which that stipulation pro-
vided. Moreover, the parties themselves, defendants as well
as plaintiff, by their later stipulation, distinctly recognized
the pendency of the case and the jurisdiction of the court to
render such judgment. On January 2, 1914, the time for the
entry of such judgment as first provided for being near at
hand, the second stipulation was entered into, apparently for
the accommodation of the defendants, by which it was agreed
that judgment should not be entered pursuant to the first
stipulation "until February 21, 1914," and permitting de-
fendants in the meantime to sell the horses, apply the amount
so realized as a credit upon the indebtedness, and make pay-
ment of the remainder on or before February 20, 1914.
Defendants did sell the horses and were credited with the
proceeds, but they did not pay the remainder of their stipu-
lated debt. On February 21, 1914, the day mentioned in
the last stipulation, the court had adjourned until Monday,
February 23d, at which time plaintiff appeared; and, upon
strength of the two stipulations and the affidavit of the attor-
ney, the court entered the judgment now in controversy.

We find nothing in the statute or rules invoked by appel-
lant which required further notice to the defendants, to
authorize the court to render the judgment. The defendants
had appeared to the action and by their own
2. JUDGMENT:
jurisdiction:      voluntary stipulation determined the amount
entry of judg-
ment: right to    of their indebtedness and the plaintiff's right
notice: waiver.   to a judgment therefor, and had fixed the
day on which judgment should be rendered. Had no further
stipulation been made, and January 5, 1914, had arrived,

the debt remaining unpaid, would plaintiff have been required
to serve notice on defendants before taking judgment? With-
out such notice, but with the stipulation before it, would the
court have been without authority to proceed? It would be
absurd to so hold. The written agreement fixing the amount
of the recovery and setting the time when plaintiff should
be at liberty to take judgment was an acknowledgment or
waiver of notice and a consent to the entry therein provided
for. The second stipulation, so far from operating as a
waiver or abandonment of the provision for judgment, is a
distinct recognition of its continuing force and effectiveness,
though it extends the time limit from January 5th to Feb-
ruary 20th. Why should defendants have had notice of that
to which they had already agreed, or of the arrival of a date
which they themselves fixed? Why should the court be held
to wait, before entering a judgment against parties already
in court according to the express terms of their written
agreement and consent? Even if we should incline to the
view that the rules and forms of procedure were not strictly
observed, it would be at most an error or irregularity, involv-
ing no question of jurisdiction.

The fact that the day named, February 20, 1914, hap-
pened to fall in the interim or recess between the adjournment
of court one week and its resumption of business the next week
is wholly immaterial. The defendants had
the benefit of all the time that they had

3. JUDGMENT:
jurisdiction:
stipulation for
judgment on
certain date:
entry on subse-
quent date.

stipulated for. The matter was taken up and
judgment entered the first day the court was
in session after the time limit had expired.
There is no claim or pretext that any advantage was taken
of the defendants, or that they were in any manner deceived
or misled, or that plaintiff obtained judgment for more than
he was entitled to under the terms of the stipulation. Indeed,
this branch of the defense is, in its entirety, of an extremely
technical character; and, while it is not for that reason to be
ignored, if in fact the court rendering the judgment had at

that time lost jurisdiction of the defendants, it is devoid of equities calling for any departure from the settled rule which gives effect to every presumption in support of the judgment of a court of general jurisdiction. The trial court did not err in holding that there was no proof upon which this defense could properly have been submitted to the jury.

II. Was there any evidence tending to sustain defendant's counterclaim for damages because of a wrongful conspiracy to defame and injure them and the business in which they were engaged?

Enough is shown to indicate that defendants have been quite largely engaged in the business of breeding and selling Percheron horses, and that they have been and are members of the American Percheron Society, organ-

4. CONSPIRACY: declarations and acts of co-conspirators: admissibility: preliminary proof necessary.

ized in the interests of owners, dealers and breeders of such animals. It also appears, more or less incidentally, that, at the time of and before the transactions between plaintiff and defendants, the membership of that or-

ganization was to some degree divided into factions, between which there was a feeling of decided hostility, and in the quarrels thus engendered, defendants, or some of them, took a prominent part. It is their theory in this case that the plaintiff colluded and combined with the enemies of defendants in the Percheron Society and elsewhere to defame and discredit them and to injure their character and standing as men of integrity and reliable breeders and dealers, and did thereby cause them great injury and damage. Much evidence on this issue was introduced by defendants on the trial below, and much more was offered and excluded. The court ruled, in effect, that most of the evidence offered in support of this defense was not admissible, and that the admissible evidence was insufficient to take the issue to the jury. In this, we think the court was correct. The record of the offered testimony is entirely too great to permit its recitation within the allowable limits of an opinion. It will sufficiently indicate

the general ground upon which it was excluded to say that, while it tended to show very clearly that defendants had enemies who were active and bitter, and were watchfully waiting an opportunity to press their charges against the business integrity of the defendants, it wholly failed to inculpate the plaintiff in any combination to promote that purpose. The court held defendants to the rule that they must produce evidence having some fair tendency to show a conspiracy between the plaintiff and the other persons named, or some of them, before being allowed to prove as against him the acts done or statements made by such other persons in pursuance of the alleged conspiracy. It may be that, in controlling the order of introduction of evidence, the court might in its discretion have permitted some deviation from this rule, but it was clearly within its rightful province in refusing so to do. The rule to which the defendant was here held is too clearly· right to be open to argument, and should be departed from only under exceptional circumstances, where it is clearly apparent that no prejudice can arise therefrom.

An examination of the record discloses but one item of the excluded evidence where the propriety of the court's ruling in this regard may at first blush seem open to question.

5. CONSPIRACY:
   evidence: sufficiency.

One Maguire, testifying for defendants, undertook to relate a conversation with plaintiff in October, 1913. He says that plaintiff there stated that certain persons, naming some whom defendants charge with conspiracy, had advised him to bring the suit against McMillan, and offered to find the evidence necessary to establish his case; that these persons had it in for McMillan and were going to ''get him'' because of trouble they had with him at certain state fairs and because of certain events in the Percheron Society. Counsel for defendants then asked, ''What did he say with reference to his own attitude in the matter?'' and to this the witness replied, ''Why he was right with them; he was the sorest fellow in the bunch; he stated that he was the fellow that really had the grievance.''

The first clause of this answer, as will be seen, is a mere general statement of the witness's conclusion, and is wholly without probative .value.  The statement attributed to plaintiff that he was the man having the grievance was true in this: he had a suit then pending against defendants, claiming that he had purchased from them as a thoroughbred, a Percheron horse or horses which were later discovered to be grades, and this was the alleged grievance of which he was complaining.  There is nothing in this which savors of conspiracy. Plaintiff must be presumed to have had a good cause of action, because, in the further progress of the case, he recovered judgment therein by the stipulation and consent of the defendants.  The other persons may have been actuated by spite or other bad motive in offering to procure evidence in support of plaintiff's claim, but the act was not unlawful. It is not shown that they did in fact furnish any evidence in the case, or, if they did furnish any, that it was not true.

Had this case gone to the jury upon a showing as meager as is made in the testimony of this witness, and the jury had therefrom found for the defendants upon their counterclaim, the verdict could not have been permitted to stand. There was no other evidence which even inferentially tended to connect the plaintiff with the alleged conspiracy.

III.  It is further argued that, in any event, defendants should have been permitted to go to the jury upon their claim for damages on account of plaintiff's failure to sign and deliver to defendants applications for the registration of the four weanling colts.  It will be remembered that, in the stipulation upon which judgment was rendered, plaintiff first undertook to turn over to defendants, with the horses there mentioned, "such certificates of registration in the Percheron Society of America as he now has."  In the second stipulation is found this clause:

6. PLEADING: construction: theory of action: change of front.

"The plaintiff as soon as he receives blank applications

will sign said applications for the registration of the four weanlings involved in this action not heretofore registered."

There was evidence offered to the effect that plaintiff did not sign the applications and that defendants prepared the blanks and sent them to plaintiff's counsel, who returned them unsigned. It appears, however, by the same witness that defendants themselves made the necessary applications, and, after some delay, the colts were in fact properly registered. Turning to the counterclaim as pleaded, we find no allegation that plaintiff's failure to sign the applications for registration had any effect to depreciate the value of said colts or that defendants were thereby compelled to sell them for any less price than they would otherwise have commanded. The essence of the charge there made is that, when the sale took place, the defendants "were compelled publicly to explain to a large crowd of horse buyers and breeders attending the sale from various parts of the country that said colts were not recorded, and that said explanation necessarily conveyed the impression that there was some difficulty and trouble concerning the recording of said colts." All this was pleaded by way of introduction to the further allegation and claim that plaintiff's failure to sign the applications was in pursuance of a conspiracy between him and other persons named, to convey and give publicity to the belief that defendants were attempting to procure the fraudulent registration of the colts, and thereby injure defendants' reputation and standing as horse breeders; and that, in further pursuance of such wrongful purpose, some of the persons with whom plaintiff is alleged to have conspired wrote letters to the officers of the Percheron Society, making false charges to prevent the registration of the animals and to defame the defendants. Upon the subject of damages, the allegation is that:

"The refusal of the plaintiff to sign the applications for the weanling colts and the writing of said letters were all done in furtherance of the conspiracy referred to in Count 2

of this answer and counterclaim for the purpose of injuring the good name and reputation of these defendants and for the purpose of injuring, breaking down and destroying the business and property of these defendants, and that by·reason thereof these defendants have been damaged in the sum of $15,000.''

It' is very clear from this pleading that defendants are not here demanding a recovery of damages for any loss upon the four colts because of the failure to sign the applications, but for ''injury to good name and reputation;'' and that the matter of the applications is alleged, not as in itself affording a cause of action, but as one of the incidents in the conspiracy by which injury had been done to their reputation and standing as breeders of Percheron horses.

The only effort to prove the alleged damages was made by calling one of the defendants to the stand and then addressing the court as follows:

**7. APPEAL AND ER-ROR: review: failure to establish cause of action: rejection of evidence of damages.**     ''Now, if your honor please, we offer to prove by this witness the amount of damages sustained under Counts 1, 2, 3, 4, 5 and 6 of the defendants' amended and substituted answer and counterclaim.''

Then, amending the offer, counsel further proposed to the court to ''prove by this witness the amount of damages sustained under each count, severally and collectively, as alleged in the amended and substituted answer and counterclaim.'' To this offer it was objected that the pleading did not show facts sufficient to constitute a defense or counterclaim, and that defendants had wholly failed to connect plaintiff with the alleged conspiracy. The objection was sustained, and we think correctly; for, as we have already said, there was a distinct failure to prove facts tending to show that plaintiff entered into the conspiracy, if there was one, to injure the defendants.

Again, it will be remembered that the failure, if any, of the plaintiff to sign the applications was a failure to perform

one of the conditions upon which he was entitled to have judgment against the defendants. The sale

**8. JUDGMENT: conclusiveness: matters adjudicated.** of the horses took place on January 24, 1914, about a month before the judgment was rendered. The failure must have been then well known to the defendants, and, if they deemed it of material importance, they could have interposed an objection to the entry of judgment. Not doing so, and permitting judgment to be entered without protest, it was thereafter too late to say that the conditions of the stipulation were not in fact performed. An adjudication of that fact inheres in the judgment; for we must assume that before rendering it the court found that the conditions of the stipulations authorizing it had been complied with. There was no error, therefore, in excluding the evidence of damage or in refusing to submit the issue to the jury.

The record discloses no prejudicial error, and the judgment below is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.